1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MITCHEL CONSTANTIN,

Plaintiff,

v.

JORGE E. NAVARRETE,

Defendant.

Case No.  22-cv-07075-VKD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Re: Dkt. Nos. 32, 42

Mitchel Constantin, who is representing himself, sues Jorge Navarrete, the Clerk and Executive Officer of the California Supreme Court, for alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., and for alleged violations of his constitutional rights under 42 U.S.C. § 1983.  Dkt. No. 29.  On November 17, 2022, Mr. Navarrete moved to dismiss the original complaint.  Dkt. Nos. 1, 7.  The Court granted Mr. Navarrete's motion but gave Mr. Constantin leave to amend his complaint.  Dkt. No. 16.  After obtaining several extensions of his deadline to file an amended pleading, Mr. Constantin filed a first amended complaint ("FAC") on March 30, 2024.  Dkt. No. 29.

Mr. Navarrete now moves to dismiss all claims in the FAC for failure to state a claim pursuant to Rule 12(b)(6).  Dkt. No. 32.  Mr. Constantin opposes this motion but requests that the FAC be "dropped" in favor of a proposed second amended complaint ("SAC").  Dkt. No. 39 at 4. Mr. Constantin separately moves for leave to file the proposed SAC, conceding that the FAC

"made no substantive changes" as compared to his original complaint.  Dkt. No. 42 at ECF[1] 7.

Mr. Navarrete opposes any further amendment by Mr. Constantin as futile.  Dkt. No. 43.  The

Court finds these motions suitable for decision without oral argument.  Dkt. Nos. 41, 45.

Upon consideration of the moving and responding papers, the Court grants Mr. Navarrete's

motion to dismiss and denies Mr. Constantin's request for leave to file the second amended

complaint.[2]

## I.    BACKGROUND

The Court's prior order described in detail Mr. Constantin's factual allegations.  *See* Dkt.

No. 16.  This order briefly summarizes only those matters that bear on the pending motions.

### A.    Mr. Constantin's Allegations

Mr. Constantin alleges that he suffers from autism spectrum disorder and anxiety disorder,

which substantially limit his ability to think, learn, understand, and communicate.  Dkt. No. 42 at

ECF 16, 19-20.  He asserts that these limitations have caused him "serious[] difficult[y]" in

accessing court services.  *Id.* at ECF 17.

In November 2021, as part of ongoing legal proceedings regarding his child support

obligations, Mr. Constantin sought to transfer his pending appeal in the California Court of

Appeal, Sixth Appellate District to the California Supreme Court, pursuant to California Rule of

Court 8.552.  *Id.* at ECF 193-212; *see also Cassie C. v. Mitchel C.*, No. H047138, 2023 WL

2237625 (Cal. Ct. App. Feb. 27, 2023).  Under this Rule, "[t]he Supreme Court will not order

transfer . . . unless the cause presents an issue of great public importance that the Supreme Court

must promptly resolve."  Cal. R. Ct. 8.552(c).  On November 4, 2021, Mr. Constantin filed a MC-

---

[1] The Court uses "ECF" to refer to the pagination of electronically filed documents, rather than the document's internal pagination.

[2] All named parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9. Mr. Constantin also asserts his claims against numerous unidentified "Doe" defendants.  Dkt. No. 29 ¶¶ 13-14.  Doe defendants are not "parties" for purposes of assessing whether there is complete consent of all parties to magistrate judge jurisdiction.  *See Williams v. King*, 875 F.3d 500, 502–05 (9th Cir. 2017); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020).

United States District Court
Northern District of California

410 "Request for Accommodations by Persons with Disabilities and Response" form and an application to file an oversized petition to transfer with the California Supreme Court. Dkt. No. 42 at ECF 22, 47. According to Mr. Constantin's application, the petition to transfer itself was not oversized but Mr. Constantin wished to attach his full opening appellate brief to the petition as well, for which a length exception request was also pending in state court. Dkt. No. 29 at ECF 179 ("The petition itself is under 3,000 words however Mr. Constantin has included his opening brief on appeal which is approximately 61,662 words . . . .").[3] The California Supreme Court denied Mr. Constantin's application to file an oversized petition the same day. Dkt. No. 42 at ECF 22, 190. Mr. Navarrete, in his capacity as Clerk of the Court, signed a letter informing Mr. Constantin of the court's decision.

Thereafter, Mr. Constantin filed two successive requests seeking clarification of the California Supreme Court's decision as well as an explanation of the court's reasons for denying his application. *Id.* at ECF 176-78, 182-83. Mr. Navarrete responded to Mr. Constantin's first request as follows: "Returned is your 'ADA Request to Clarify' and the application for reconsideration of denial of the application for relief from default. The court has directed return of such applications for the reason that the California Rules of Court do not authorize reconsideration of such applications." *Id.* at ECF 185. He responded to Mr. Constantin's second request as follows: "No action may be taken on your letter . . . . The court does not state the reason for the denial of applications brought before it. The above case has been closed, any letters, motion, applications, or requests will not be considered." *Id.* at ECF 192.

## B.    Procedural History

On October 3, 2022, Mr. Constantin filed an action against Mr. Navarrete in Monterey County Superior Court, alleging that the denial of his petition and subsequent interactions with Mr. Navarrete and the California Supreme Court violated his rights under Title II of the ADA and the United States Constitution. Dkt. No. 1. On November 10, 2022, Mr. Navarrete removed the case to federal court. *Id.*

---

[3] California Rule of Court 8.504(d) states that "[o]n application and for good cause, the Chief Justice may permit a longer petition, answer, reply, or attachment."

1

2

3

4

5

6

7

8

9

On September 5, 2023, the Court dismissed Mr. Constantin's complaint, finding that: (1) most of Mr. Constantin's damages claims were barred by quasi-judicial immunity; (2) to the extent any claim was not barred by quasi-judicial immunity, Mr. Constantin had not "plausibly allege[d] any connection between" his disability and the requested accommodation of an oversized petition sufficient to state a claim; (3) Mr. Navarrete could not be held individually liable under Title II of the ADA as he is not a public entity; (4) an alleged violation of the ADA may not form the basis for a claim under 42 U.S.C. § 1983; (5) Mr. Constantin lacked standing to seek equitable relief under the ADA; (6) injunctive relief was unavailable under § 1983; and (7) Mr. Constantin lacked standing to seek declaratory relief under § 1983.  Dkt. No. 16.

Mr. Constantin filed the FAC on March 30, 2024.  Dkt. No. 29.  In his amended complaint, Mr. Constantin re-alleged that Mr. Navarrete, as a representative of the California Supreme Court, violated Title II of the ADA by failing to address his MC-410 "Request for Accommodations" form (claim 1), denying the request to file an oversized petition (claim 2), refusing to provide an explanation of that denial (claim 3), and ignoring his request to "cut the red tape" and consider his opening appellate brief (claim 4).  In addition, Mr. Constantin again asserted claims under 42 U.S.C. § 1983, alleging violations of his First Amendment rights of freedom of speech (claim 5) and freedom to petition (claim 6), liability for failure to train (claim 7), and a violation of his Fourteenth Amendment right to due process (claim 8).[4]  Mr. Constantin sought $250,000 in compensatory damages, as well as injunctive and declaratory relief.

On May 30, 2024, Mr. Navarrete filed a motion to dismiss the FAC.  Dkt. No. 32.  After several delays, Mr. Constantin filed a short opposition to the motion to dismiss on August 20, 2024.  Dkt. No. 39.  In the opposition, Mr. Constantin addressed only one of Mr. Navarrete's arguments for dismissal, requested that the FAC and motion to dismiss be "dropped," and stated his intent to file a motion for leave to file another amended complaint.  *Id.* at 4.

On September 13, 2024, Mr. Constantin filed a motion for leave to file the SAC, which he

---

[4] In the FAC, Mr. Constantin attempted to add a ninth claim for retaliation under Title II of the ADA.  This Court's prior order stated that Mr. Constantin "may not add new claims or parties absent leave of [the] Court."  Dkt. No. 16 at 15.  Mr. Constantin did not seek leave to add this claim.  This claim is not reasserted in his proposed SAC.

attached to his motion.  Dkt. No. 42.  In the motion, Mr. Constantin argues that he did not

understand the Court's prior order on the motion to dismiss and therefore did not make the

requisite changes before filing the FAC.  *Id.* at ECF 2-3.  He advises that the SAC represents his

"first true substantive factual amendments to the initial complaint."  *Id.* at ECF 8.  The proposed

SAC includes four claims: (1) failure to engage in an interactive process, in violation of Title II of

the ADA; (2) failure to interactively and effectively communicate, in violation of Title II of the

ADA; (3) failure to train, in violation of the equal protection clause of the Fourteenth Amendment;

and (4) failure to engage in an interactive process, in violation of the equal protection clause of the

Fourteenth Amendment.  Mr. Constantin requests compensatory damages in an amount to be

proven at trial, as well as injunctive and declaratory relief.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal

sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts

alleged to support a cognizable legal theory.  *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990)).  At the motion to dismiss stage, all material allegations in the

complaint must be taken as true and construed in the light most favorable to the claimant.  *Id.*

The factual allegations in the complaint "must be enough to raise a right to relief above the

speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Implausible claims for relief will not survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009).  A claim is plausible if its factual content permits the court to draw a reasonable

inference that the defendant is liable for the alleged misconduct.  *Id.*

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  However, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at

678.  "The court is not required to accept legal conclusions cast in the form of factual allegations if

those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness

Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This is particularly true with respect to the factual allegations in a pro se complaint. *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023). "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).

Rule 15(a) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is committed to the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). When considering whether to grant leave to amend, a court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile only if it would be immediately subject to dismissal." *Johnson v. Serenity Transportation, Inc.*, No. 15-cv-02004-JSC, 2015 WL 4913266, at *3 (N.D. Cal. Aug. 17, 2015) (citing *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir.2011)). "Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*

## III.    DISCUSSION

### A.    Mr. Navarrete's Motion to Dismiss the FAC

In moving to dismiss the FAC, Mr. Navarrete argues that: (1) any claims for damages under the ADA and 42 U.S.C. § 1983 are barred by the doctrine of quasi-judicial immunity; (2) Mr. Constantin lacks standing to seek equitable relief under the ADA; (3) injunctive relief and retrospective declaratory relief are not available remedies for his § 1983 claims; and (4) § 1983 cannot be used to vindicate rights under the ADA. Dkt. No. 32. Mr. Navarrete also asks the Court to take judicial notice of materials from Mr. Constantin's state court litigation. Dkt. No. 32-1.

In his response to Mr. Navarrete's motion to dismiss, Mr. Constantin clarifies that his claims are based on the alleged failure of Mr. Navarrete, in his official capacity as a representative

of the California Supreme Court, to engage in an interactive process to determine an appropriate accommodation for him—not on Mr. Navarrete's denial of any specific accommodation request. Dkt. No. 39 at 2-3.  Mr. Constantin also makes a brief challenge to the application of quasi-judicial immunity.  *Id.*  Mr. Constantin otherwise does not oppose Mr. Navarrete's motion to dismiss the FAC.  *Id.*  Indeed, he specifically asks the Court to permit him to "drop" the FAC and to file the SAC in its place.  *Id.* at 4.

In these circumstances, the Court grants Mr. Navarrete's motion to dismiss the FAC.  The Court also grants Mr. Navarrete's request for judicial notice of the dockets and the existence of materials filed with the California Supreme Court and the Court of Appeal in Mr. Constantin's state court litigation.  Dkt. No. 32-1 at 2.  These documents are reliable public records and overlap with materials already attached as exhibits to Mr. Constantin's complaint.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); Fed. R. Evid. 201(b).

### B.    Mr. Constantin's Motion for Leave to File the SAC

Mr. Navarrete opposes Mr. Constantin's motion for leave to amend on the ground that further amendment is futile.  Mr. Navarrete principally relies on the arguments he made in support of his motion to dismiss the FAC.  Dkt. No. 43 at 4.  Although the proposed SAC includes fewer claims than the FAC, the Court will consider the relevant arguments from Mr. Navarrete's motion to dismiss in deciding whether Mr. Constantin should be permitted to file the proposed SAC in addition to any relevant arguments from Mr. Navarrete's opposition to the motion for leave to file the proposed SAC.  *See id.* at 2.

#### 1.    Claims 1 and 2:  ADA Interactive Process

The proposed SAC asserts two claims for relief under the ADA.  In claim 1, Mr. Constantin alleges that he submitted an MC-410 form to the California Supreme Court requesting an accommodation for "help with oral argument and court processes," which was denied (Dkt. No. 42 at ECF 38), and in claim 2, Mr. Constantin alleges that his request for leave to file an oversized petition was denied and that subsequent requests for an explanation regarding this denial as an accommodation were also denied (*id.* at ECF 40-42).  As to both claims, Mr. Constantin contends that Mr. Navarrete failed to reasonably accommodate his disabilities by refusing to engage in an

1   interactive process in response to his requests for an accommodation and for clarification, in

2   violation of Title II of the ADA.  Dkt. No. 42 at ECF 38.  Mr. Navarrete does not argue that Mr.

3   Constantin fails to plausibly allege he is a person with a disability, or that he was "otherwise

4   qualified" to file a petition to transfer his appeal to the California Supreme Court for review.  Mr.

5   Navarrete argues that Mr. Constantin fails to plausibly allege that he was discriminated against

6   because of his disability.  *See* Dkt. No. 43 at 3-4.

7         To state a claim for a violation under Title II of the ADA, a plaintiff must plausibly allege

8   that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from

9   participation in or denied the benefits of a public entity's services, programs, or activities, or was

10  otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

11  discrimination was by reason of his disability."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135

12  (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  A "qualified individual" is

13  someone who "was otherwise qualified to participate in or receive the benefit of some public

14  entity's services, programs, or activities."  *Prado v. City of Berkeley*, No. 23-cv-04537-EMC,

15  2024 WL 3697037, at *21 (N.D. Cal. Aug. 6, 2024) (citations and quotations omitted).  A

16  disability discrimination claim may be based on the failure of a public entity to reasonably

17  accommodate a qualified individual's disability.  *Id.* at *20 (citing *Payan v. Los Angeles Cmty.*

18  *Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021)).  A public entity must "make reasonable

19  modifications in policies, practices, or procedures when the modifications are necessary to avoid

20  discrimination on the basis of disability, unless the public entity can demonstrate that making the

21  modifications would fundamentally alter the nature of the service, program, or activity."  28

22  C.F.R. § 35.130(b)(7)(1); *see Payan*, 11 F.4th at 738.

23        "[O]nce a public entity receives 'notification of [an individual's] disability and the desire

24  for accommodation,' it has an affirmative obligation to 'engage in an interactive process to

25  consider [the disabled individual's] requested accommodations.'"[5]  *Payan v. Los Angeles Cmty.*

26

27  _____
    [5] The parties appear to assume that the "interactive process" requirement, derived from
28  employment cases under Title I, applies to claims brought under Title II.  *See Vinson v. Thomas*,
    288 F.3d 1145, 1154 (9th Cir. 2002) (finding government agency had "a duty to engage in an
    interactive process to consider plaintiff's requested accommodations" for access to its services

*Coll. Dist.*, No. 2:17-cv-01697-SVW-SK, 2018 WL 6164269, at *14 (C.D. Cal. Oct. 16, 2018) (citation omitted); *Huynh v. Harasz*, No. 14-cv-02367-LHK, 2016 WL 2757219, at *17 (N.D. Cal. May 12, 2016) ("[A] public entity . . . must undertake a fact-specific, case-by-case review of each reasonable accommodation request" and if one is necessary, "may need to then engage in an interactive process to determine what accommodation to provide."); *see also Duvall*, 260 F.3d at 1139 ("A public entity's duty on receiving a request for accommodation is well settled by our case law and by the applicable regulations. It is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.").  However, "there exists no stand-alone claim for failing to engage in the interactive process."  *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (discussing Title I claim).[6]  Thus, a plaintiff may state a claim for failure to engage in an interactive process only where he or she also plausibly alleges that "a reasonable accommodation would have been possible."  *Payan*, 2018 WL 6164269, at *14; *see also Ahmed v. Regents of Univ. of California*, No. 17-cv-0709-MMA (NLS), 2018 WL 3969699, at *5 (S.D. Cal. Aug. 20, 2018) ("[T]his conclusion—that if a defendant fails to engage in the interactive process, at trial a plaintiff still must establish the existence of a reasonable accommodation—is consistent with virtually every single other Circuit . . . .") (quoting *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1115 (D. Haw. 2015), *aff'd sub nom. Yonemoto v. Shulkin*, 725 F. App'x 482 (9th Cir. 2018)).

Broadly construed, the proposed SAC identifies three events that Mr. Constantin says triggered Mr. Navarrete's obligation to engage in an interactive process: (1) his submission of the MC-410 accommodation request form; (2) his application to file an oversized petition; and (3) his "ADA Request[s] to Clarify" seeking explanations for the denial of this application/petition.  Dkt.

---

under Section 504 of the Rehabilitation Act); *cf. Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 964 (9th Cir. 2019) (finding the "interactive process" explicitly did not apply to claims brought under Title III of the ADA).  The Court therefore assumes without deciding that the interactive process requirement applies in the Title II context for the purpose of resolving the current motions.

[6] *See Huynh*, 2016 WL 2757219, at 17 n.3 ( "[C]ourts—including the Ninth Circuit—routinely rely upon employment discrimination cases to interpret the reasonable accommodation requirement in [a Title II context.]").

1   No. 42 at ECF 38-40.

2   a.      MC-410 form

3       On November 4, 2021, Mr. Constantin submitted an MC-410 form requesting "help with

4   oral argument and court processes," noting that he needed assistance for all future hearings.  *Id.* at

5   ECF 47.  However, as his petition to transfer a pending appeal to the California Supreme Court did

6   not progress to the hearing stage, no hearings ever occurred in the matter.  *See* Dkt. No. 43 at 3.

7   As there was therefore no need for the accommodation Mr. Constantin requested—i.e. assistance

8   with oral argument and court processes at any future hearings—the SAC fails to state a claim for

9   failure to engage in an interactive process, with respect to Mr. Constantin's purported need for a

10  modification to the court's usual procedures for such hearings.  Mr. Constantin does not explain

11  how granting his request for assistance with oral argument and court processes at future hearings

12  could have any bearing on the California Supreme Court's rejection of his petition to transfer in

13  the first instance, nor why the court would have a continuing duty to engage with him after that

14  rejection.  *Cf. Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) (in Title I

15  action, where reasonable accommodation could have potentially permitted employee to keep her

16  job, for which she was otherwise qualified, employee's failure to ask for the accommodation

17  before termination did not relieve employer of obligation to have engaged in interactive process

18  regarding such accommodation).

19  b.      Application to file oversized petition

20      Also on November 4, 2021, Mr. Constantin filed an application for permission to file an

21  oversized petition to transfer.  Under the California Rules of Court, such a petition generally may

22  not exceed 8,400 words; Mr. Constantin's petition, which included his opening appellate brief in

23  full, was well over 60,000 words.  Mr. Constantin alleges that the court's word limit prevented

24  him from effectively articulating the alleged importance of the issue raised by his appeal, and that

25  he requested an accommodation—i.e. to exceed the word limit—so that he could obtain the full

26  benefit of the opportunity to petition to transfer his appeal to the California Supreme Court.  Dkt.

27  No. 42 at ECF 40-41.  He alleges that Mr. Navarrete refused to engage with him, in an interactive

28  process, to determine whether any modifications to the court's filing requirements could be made

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    to accommodate Mr. Constantin's disabilities.  *Id.*

2         The Court questions whether Mr. Constantin plausibly alleges a connection between his

3    disabilities and his alleged need for extra words beyond the 8,400 words provided by the court's

4    rules in order to effectively petition to transfer his appeal.  *See* Dkt. No. 16 at 10.  However, Mr.

5    Navarrete does not challenge the SAC on this basis, nor does he suggest that no accommodation

6    would have been possible.  *See* Dkt. No. 40 at 5; Dkt. No. 43 at 3.  Rather, Mr. Navarrete argues

7    that Mr. Constantin was not "deprived of any benefit enjoyed by non-disabled litigants" because

8    the California Supreme Court has discretion to grant a petition to transfer an appeal and only does

9    so in extraordinary circumstances.  Dkt. No. 43 at 3-4.  This argument is unpersuasive, as Mr.

10   Constantin does not contend that his petition should have been granted on the merits, but only that

11   he should have been afforded an opportunity to effectively petition for relief by filing a petition

12   that exceeded the word limits, and that he was prevented from doing so when Mr. Navarrete

13   denied his application to file an oversized petition and refused to discuss any modification of those

14   limits, or any other accommodation, with him.  Dkt. No. 42 at ECF 38-42; Dkt. No. 39 at 3 ("In

15   otherwards[sic], the length of the request is not the point/issue but the outright refusal to engage in

16   an interactive process is.").

17        Thus, drawing all inferences in the light most favorable to Mr. Constantin, the Court finds

18   that the proposed SAC states a plausible claim that Mr. Navarrete did not fulfill his obligations

19   under Title II of the ADA when he failed to engage in an interactive process with respect to Mr.

20   Constantin's application to file an oversized petition.

21                        **c.      Requests for clarification**

22        Mr. Constantin alleges that on November 23, 2021 and December 8, 2021, he asked the

23   California Supreme Court to "explain their decision [to deny his application to submit an

24   oversized petition] to him to help him understand due to his learning disability."  Dkt. No. 42 at

25   ECF 40.  In response, he received letters from Mr. Navarrete, stating that "[t]he court does not

26   state the reason for the denial of applications brought before it."  *Id.* at ECF 192.  Mr. Constantin

27   argues that Mr. Navarrete's failure to respond to his request or otherwise engage with him about it

28   denied him "full access to [the] court and its processes."  *Id.* at ECF 24.  Mr. Navarrete argues that

1    he had no obligation to engage with Mr. Constantin following denial of the application, as the case

2    was closed.  Dkt. No. 40 at 5; Dkt. No. 43 at 3.

3        Unlike his request to exceed the word limits for filing a petition to transfer, Mr. Constantin

4    does not plausibly allege how Mr. Navarrete's failure to provide an explanation of the court's

5    decision denying that application deprived him of "full" access to the court.  Specifically, he does

6    not plausibly allege any connection between his desire for an explanation, which the court

7    generally does not provide to litigants,[7] and his ability to petition the court.  Thus, Mr. Constantin

8    fails to plausibly allege any obligation to engage in an interactive process to determine whether the

9    court should modify its usual practice of not providing an explanation for such decisions.[8]

10                                ***

11        For the reasons explained above, the Court concludes that claims 1 and 2 in the proposed

12    SAC fail to state a claim for violation of Title II of the ADA, except to the extent that the claims

13    assert that Mr. Navarrete, acting in his official capacity, failed to engage in an interactive process

14    with respect to Mr. Constantin's request for permission to file an oversized petition to transfer—

15    i.e. the alleged accommodation for his disabilities.

16           **2.**        **Claims 3 and 4: Section 1983 Fourteenth Amendment Equal Protection**

17        The proposed SAC asserts two claims for relief under § 1983.  In claim 3, Mr. Constantin

18    alleges that Mr. Navarrete, acting on behalf of the California Supreme Court, violated his

19    constitutional right to equal protection under the Fourteenth Amendment because the court failed

20

21    _____

   [7] Mr. Constantin suggests that California Rule of Court 1.100(e) requires the California Supreme

22    Court to provide a reason for denying his requests for accommodation.  Dkt. No. 42 at ECF 24.
   To the extent Mr. Constantin contends that this rule required Mr. Navarrete to explain why the

23    court did not permit him to file an oversized application under California Rule of Court
   8.504(d)(4), and that failure to do so supports a conclusion that Mr. Navarrete failed to comply

24    with the ADA's interactive process requirement, Mr. Constantin provides no authority for this
   position.

25       [8] Mr. Constantin also asserts that Mr. Navarrete's failure to provide an explanation was a violation

26    of 28 C.F.R. § 35.160 which requires that "[a] public entity shall take appropriate steps to ensure
   that communications with applicants, participants, members of the public, and companions with

27    disabilities are as effective as communications with others."  Dkt. No. 42 at ECF 41.  Mr.
   Constantin cites no authority in support of his assertion that this regulation requires an entity to

28    communicate information to individuals with disabilities that it would not normally provide to
   individuals without disabilities nor is the Court aware of any such authority.

United States District Court
Northern District of California

United States District Court
Northern District of California

to adequately train its employees.  Dkt. No. 42 at ECF 42-43.  In claim 4, Mr. Constantin alleges that Mr. Navarrete, acting on behalf of the California Supreme Court, violated his constitutional right to equal protection under the Fourteenth Amendment by refusing to engage in an interactive process with him.  *Id.* at ECF 44.  Specifically, Mr. Constantin argues that Mr. Navarrete's failure to engage in an interactive process "prevents a person with a disability from having equal access to the courts when compared to plaintiff's non-disabled peers."  *Id.*  Mr. Navarrete argues that a claim based on alleged violations of the ADA cannot be the basis for a claim under § 1983.  Dkt. No. 32 at 10.  He further argues more generally that Mr. Constantin "was not deprived of any benefit enjoyed by non-disabled litigants in the California Supreme Court" because "the California Constitution affords no right of appeal to the Supreme Court."  Dkt. No. 43 at 3.

As stated in its prior order, the Court notes that to the extent Mr. Constantin asserts claims under § 1983 in an effort to vindicate rights under Title II of the ADA, he may not do so.  *See Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012); *Vinson*, 288 F.3d at 1155-56; *see also* Dkt. No. 16 at 11.  However, if appropriate, Mr. Constantin may rely on the *same facts* underlying his ADA claim to support an independent § 1983 claim based on violations of other constitutional or statutory rights.  Thus, the Court considers whether claims 3 and 4 independently state plausible claims for relief under § 1983.

### a.    Eleventh Amendment immunity

Mr. Constantin brings his § 1983 claims against Mr. Navarrete "in his official capacity as Clerk and Chief Executive Officer of our Supreme Court of California."  Dkt. No. 42 at ECF 10.  While Mr. Navarrete does not challenge Mr. Constantin's complaint on this basis, claims brought in federal court against state actors in their official capacities may be barred by the doctrine of state sovereign immunity.

Under this doctrine, "a federal court generally may not hear a suit brought by any person against a nonconsenting State."  *Allen v. Cooper*, 589 U.S. 248, 254 (2020).  This bar applies to claims asserted under § 1983, which "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  Indeed, "[t]he Eleventh Amendment bars such suits unless the

13

1   State has waived its immunity [citation omitted], or unless Congress has exercised its undoubted

2   power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* Entities such as

3   state courts "ha[ve] sovereign immunity as [] arm[s] of the state," *Munoz v. Superior Ct. of Los*

4   *Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024), and this "grant of immunity extends to state

5   officials sued in their official capacities," *Nilsen v. Blum*, No. 17-cv-04175 WHA, 2017 WL

6   6520752, at *1 (N.D. Cal. Oct. 5, 2017). This immunity generally precludes all forms of relief,

7   with a narrow exception carved out by the U.S. Supreme Court for suits against state officials "for

8   prospective injunctive relief to prevent future statutory or constitutional harms." *Id.* (citing *Ex*

9   *parte Young*, 209 U.S. 123 (1908)).

10          However, the protections of Eleventh Amendment immunity are subject to waiver.

11  "Express waiver is not required; a state 'waive[s] its Eleventh Amendment immunity by conduct

12  that is incompatible with an intent to preserve that immunity.'" *Aholelei v. Dep't of Pub. Safety*,

13  488 F.3d 1144, 1147 (9th Cir. 2007) (quoting *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir.2002))

14  (alterations in original). Failing to raise the immunity defense early in the proceedings may

15  constitute such a waiver. *See Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001) ("We

16  previously have held that Eleventh Amendment immunity is an affirmative defense, [citation

17  omitted], that must be raised 'early in the proceedings' to provide 'fair warning' to the plaintiff.");

18  *see also Aholelei*, 488 F.3d at 1148 (finding no waiver where "[t]he State defendants raised their

19  immunity defense in answering and reasserted that defense on motion for summary judgment.").

20          Here, Mr. Constantin sues Mr. Navarrete in his official capacity as a representative of the

21  California Supreme Court, a quintessential state institution. State sovereign immunity could

22  therefore apply absent a waiver by the state. As this issue was not briefed by either party, the

23  Court does not decide at this time whether Eleventh Amendment immunity would bar Mr.

24  Constantin's § 1983 claims.

25                          **b.    Official capacity**

26          As noted above, Mr. Constantin sues Mr. Navarrete in his official capacity. "A suit against

27  a state official in her or his official capacity is not a suit against the official but rather is a suit

28  against the official's office . . . . [and] [a]s such it is no different from a suit against the [s]tate

United States District Court
Northern District of California

14

1    itself." *Will*, 492 U.S. at 71. A state official sued in his official capacity is not a "person" within

2    the meaning of § 1983. *Id.*; 42 U.S.C. § 1983 ("[e]very *person* who, under color of any statute,

3    ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

4    subjects, or causes to be subjected, any citizen of the United States or other person within the

5    jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

6    Constitution and laws, shall be liable . . . .") (emphasis added).[9]

7        In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court held that a

8    "person" may include local government entities whose official policy, practice, or custom, such as

9    improper training, cause a constitutional tort. 436 U.S. 658, 690-91 (1978). However, *Monell*'s

10   holding is limited to "local government units which are not considered part of the State for

11   Eleventh Amendment purposes." *Nilsen*, 2017 WL 6520752, at *2 (quoting *Monell*, 436 U.S. at

12   690 n.54). As discussed above, a state court is an "arm of the state" for Eleventh Amendment

13   purposes and therefore is not subject to *Monell* liability.

14       Mr. Constantin thus cannot state a § 1983 claim for damages against Mr. Navarrete in his

15   official capacity or against the California Supreme Court directly.

16                          **c.    Individual capacity**

17       Even if the Court were to construe Mr. Constantin's proposed § 1983 claims as being

18   asserted against Mr. Navarrete in his individual capacity, the proposed SAC still fails to state a

19   claim under § 1983. To state a claim for relief under § 1983, a plaintiff must plead two essential

20   elements: (1) that a right secured by the Constitution or laws of the United States was violated,

21   and (2) that the alleged violation was committed by a person acting under color of state law. *See*

22   *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no disagreement that Mr. Navarrete was acting

23   under color of state law in his interactions with Mr. Constantin. The question is whether Mr.

24   Constantin plausibly alleges a violation of "a right secured by the Constitution or laws of the

25   _____

26   [9] The exception to this is, as discussed, suits for prospective injunctive relief. *See Flint v.*
     *Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("When sued for prospective injunctive relief, a state
27   official in his official capacity is considered a 'person' for § 1983 purposes."); *cf. Arizonans for*
     *Off. Eng. v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like
28   States themselves, are not amenable to suit for damages under § 1983."). But as Mr. Constantin
     otherwise fails to state a claim under § 1983, the Court does not address this issue here.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  United States"—here, a violation of his rights under the equal protection clause of the Fourteenth

2  Amendment.

3  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of

4  the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or

5  purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren*

6  *v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  As disabled individuals are not considered a

7  suspect class for equal protection purposes, government actions resulting in disparate treatment

8  against the disabled are subject to the lowest tier of scrutiny, rational basis review.  *City of*

9  *Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).  Thus, to state a claim, Mr.

10  Constantin must allege that "similarly situated individuals were intentionally treated differently

11  without rational relationship to a legitimate state purpose." *Sisneros v. Oakland Unified Sch.*

12  *Dist.*, No. 14-cv-05144-JST, 2015 WL 1431679, at *2 (N.D. Cal. Mar. 27, 2015); *see also Lee v.*

13  *City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("Because 'the disabled do not constitute a

14  suspect class' for equal protection purposes, a governmental policy that purposefully treats the

15  disabled differently from the non-disabled need only be 'rationally related to legitimate legislative

16  goals' to pass constitutional muster.") (quoting *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th

17  Cir.1996)), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119,

18  1125-26 (9th Cir. 2002).

19  Mr. Constantin fails to allege that otherwise similarly-situated individuals were treated

20  differently from disabled individuals, such as himself; he alleges only that "[the California

21  Supreme Court] already does [his requested accommodations] for other people."  Dkt. No. 42 at

22  ECF 31.  Indeed, a reading of Mr. Constantin's proposed SAC as whole indicates that he objects

23  to the fact that the California Supreme Court did *not* treat him differently than other litigants, i.e. it

24  did not provide him special accommodations that are ordinarily unavailable to other litigants.  *Id.*

25  at ECF 25 ("Mr. Constantin alleges that court processes that *do not accommodate* individuals with

26  plaintiff's disabilities, in violation of Title II of the ADA, also violate the equal protection clause

27  of the 14th amendment to the U.S. Constitution."); ECF 42 ("This CSC policy of *refusing to*

28  *engage persons with disabilities* and *assessing reasonable accommodation requests* prevent

16

persons with disabilities from having equal access to the courts compared to nondisabled individuals."); ECF 44 ("Refusing *to engage in an interactive process* when it come to a person with a disability prevents a person with a disability from having equal access to the courts when compared to plaintiff's nondisabled peers and is in violation of the equal protection clause of the 14th Amendment to the U.S. Constitution."). Mr. Constantin is mistaken about the law. His allegations and arguments that he is entitled to have Mr. Navarrete communicate with him in the manner he describes do not plausibly support a Fourteenth Amendment equal protection claim. *See Lee*, 250 F.3d at 687 (dismissing plaintiffs' equal protection claim and noting that "the gravamen of plaintiffs' complaint is that defendants *failed* to treat disabled persons differently from others similarly situated.").

\*\*\*

For the reasons explained above, the Court concludes that claims 3 and 4 in the proposed SAC fail to state a claim for relief under 42 U.S.C. § 1983 for violation of the equal protection clause of the Fourteenth Amendment.

### C.    Whether Mr. Constantin's Claims Are Otherwise Barred as a Matter of Law

As explained above, the Court concludes that the proposed SAC adequately states a claim that Mr. Navarrete, acting in his official capacity, failed to engage in an interactive process with respect to Mr. Constantin's application to file an oversized petition, in violation of Title II of the ADA, but does not otherwise state a claim for relief. As this claim remains, the Court now considers Mr. Navarrete's arguments that the relief Mr. Constantin seeks is unavailable as a matter of law.

#### 1.    Compensatory damages

Compensatory damages are not available for violations of Title II of the ADA, absent a showing of discriminatory intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998). In the Title II context, discriminatory intent is demonstrated through a showing of deliberate indifference. *Duvall*, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Id.* at 1139. The Court questions whether the proposed SAC includes

any plausible allegations of deliberate indifference by Mr. Navarrete. *Cf. Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002) (where case involved "a categorical exclusion of disabled persons from a public program," "the public entity is, at the very least, 'deliberately indifferent'" because "by its very terms, facial discrimination is 'intentional'."). However, Mr. Navarrete does not challenge Mr. Constantin's demand for compensatory damages on this basis, and so the Court assumes, for purposes of this motion, that such a claim for relief is adequately pled.

Mr. Navarrete argues that to the extent Mr. Constantin seeks damages, his claims are barred by the doctrine of quasi-judicial immunity. Dkt. No. 32 at 7. Mr. Constantin argues that Mr. Navarrete is sued in his official capacity, as the Chief Executive Officer of the California, not in his individual capacity and that he does not enjoy immunity from damages claims for violations of the ADA. Dkt. No. 39 at 2-3.

As relevant here, court clerks have "quasi-judicial" immunity from suits for damages when they perform tasks that are an integral part of the judicial process or that are undertaken at the express direction of a judicial officer. *See Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 916 (9th Cir. 2021); *Wright v. Beck*, 981 F.3d 719, 737-38 (9th Cir. 2020); *Page v. Navarrete*, No. 24-1424-PCP, 2024 WL 4469188, at *1-2 (N.D. Cal. Oct. 10, 2024); *Phiffer v. Oregon*, No. 10-cv-1120-SU, 2011 WL 7396602, at *6 (D. Or. Nov. 21, 2011), *report and recommendation adopted*, 2012 WL 529948 (D. Or. Feb. 17, 2012), *aff'd*, 586 F. App'x 425 (9th Cir. 2014). "[C]ourts must look to the nature of the function performed and not to the identity of the actor performing it," in addressing questions of quasi-judicial immunity. *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002). Where a non-judicial officer makes a discretionary decision, quasi-judicial immunity will only apply if the decision "was functionally comparable to the type of decision made by a judge." *Duvall*, 260 F.3d at 1134.

In its previous order, the Court found that Mr. Navarrete was immune from damages for his actions "communicat[ing] decisions on behalf of the court on the merits of Mr. Constantin's request for permission to file a petition that exceeded the page limits set forth in the court's rules." Dkt. No. 16 at 9. The Court observed that documents attached to the complaint supported the determination that Mr. Navarrete was working in conjunction with the court or exercising his

18

1   discretion on behalf of the court in responding to Mr. Constantin's requests, documents which

2   continue to be attached to, and referenced by, the SAC.  *See* Dkt. No. 42 at ECF 22-24; *see also*

3   *id.* at ECF 180 ("*The court* has considered your application . . ."); ECF 185 ("*The court* has

4   directed return of such applications . . ."); ECF 192 ("*The court* does not state the reason for the

5   denial of applications brought before it.") (emphasis added); *see also Moore v. Brewster*, 96 F.3d

6   1240, 1244 (9th Cir. 1996) (clerk's actions "in coordination" with judge are protected by quasi-

7   judicial immunity), *superseded by statute on other grounds*.  While these fundamental facts have

8   not changed, Mr. Constantin reframes his allegations to challenge Mr. Navarrete's failure to

9   engage with him regarding modifications to the court's usual rules, and not the denial of his

10  application to file an oversized petition *per se*.  Dkt. No. 42 at ECF 30-33.

11      Mr. Constantin's reframing of his ADA claim is not persuasive.  As the Court explained in

12  its prior order, there are no allegations that Mr. Navarrete engaged "in any administrative function

13  unrelated to the judicial process itself."  Dkt. No. 16 at 9.  Nor are there any allegations that Mr.

14  Navarrete was the officially designated ADA coordinator for the court and "had ministerial

15  authority to arrange courtroom accommodations for disabled individuals" or was acting to

16  "implement[] the requirements of the ADA pursuant to duties that had been assigned to [him]."

17  *Duvall*, 260 F.3d at 1134.  Rather, the allegations of the proposed SAC, like the allegations in the

18  original complaint, reflect that Mr. Navarrete acted in his official capacity as clerk of the court in

19  communicating the court's decisions and performing other judicial functions such as accepting or

20  denying applications for relief.  *See* Dkt. No. 40 at 4 ("Navarrete's role in connection with the

21  application to file an oversized petition was to provide Plaintiff written notice of the denial of the

22  application and responds to Plaintiff's subsequent requests for clarification."); *see also In re*

23  *Castillo*, 297 F.3d at 952 ("[W]e have extended absolute quasi-judicial immunity . . . to court

24  clerks and other non-judicial officers for purely administrative acts—acts which taken out of

25  context would appear ministerial, but when viewed in context are actually a part of the judicial

26  function.").  Mr. Navarrete is entitled to immunity from damages for actions arising from his

27  enforcement of the court's rules and procedures.  *See Page*, 2024 WL 4469188, at *2 (explaining

28  and collecting authority).

United States District Court
Northern District of California

1    Accordingly, the Court concludes that Mr. Navarrete is entitled to quasi-judicial immunity

2    with respect to Mr. Constantin's claims for violation of Title II of the ADA, to the extent he seeks

3    damages.

4            **2.      Equitable relief**

5    Mr. Navarrete argues that Mr. Constantin does not have standing to seek declaratory or

6    injunctive relief for alleged violations of Title II of the ADA.  Dkt. No. 32 at 8-9.  Mr. Constantin

7    does not respond to these arguments.  *See* Dkt. Nos. 39, 42.

8            **a.      Injunctive relief**

9    It is unclear whether the proposed SAC seeks injunctive relief, and if it does, what actions

10   Mr. Constantin asks this Court to enjoin.  *See* Dkt. No. 42 at ECF 39 ("42 U.S. Code § 12133

11   (enforcement) entitles Mr. Constantin to declaratory relief stating that CSC must engage in an

12   interactive process with Mr. Constantin and injunctive relief if they do not."); ECF 45 (seeking

13   generic injunctive relief).  Mr. Navarrete argues that Mr. Constantin has not alleged "a real and

14   immediate threat of a future violation of the ADA," as required to support standing to obtain the

15   injunctive relief he seeks.  Dkt. No. 32 at 9.

16   Mr. Constantin contends that "the issues between [him] and CSC are ongoing," and "his

17   continued access to the California court system is compromised."  Dkt No. 42 at ECF 24.  He

18   notes that "at any moment [he could] be required to attend court due to various reasons such as a

19   traffic ticket and civil court issues."  *Id.*; *see also id.* at ECF 35 ("Mr. Constantin is likely to return

20   to the California Supreme Court and need its services.  He has an open family law case . . . for the

21   next ten (9) (sic) years and several other civil actions he is working on filing.").  He also adds that

22   he "has legal injuries he has been unable to bring to court due to the continued difficulty he is

23   experiencing while attempting to access court services."  *Id.* at ECF 24.

24   "To establish Article III standing, an injury must be concrete, particularized, and actual or

25   imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."

26   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).  "To have standing to assert

27   a claim for prospective injunctive relief, a plaintiff must demonstrate that he is realistically

28   threatened by a repetition of the violation."  *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir.

United States District Court
Northern District of California

20

2012), (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)) (cleaned up).  A plaintiff may do so by showing "that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy" or "that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights."  *Id.* at 998 (cleaned up).

In its prior order, the Court found that Mr. Constantin failed to plausibly allege a likelihood of future harm.  Dkt. No. 16 at 12.  Construing the SAC liberally, the Court understands that Mr. Constantin now seeks an injunction requiring Mr. Navarrete to engage in an interactive process with him, should he ever have occasion in the future to file an application or petition with the California Supreme Court.  Dkt. No. 42 at ECF 39.  The SAC again fails to plausibly allege a realistic, concrete possibility of future harm.  As noted above, Mr. Constantin alleges no pattern of similar alleged violations, but relies solely on his own experience interacting on one occasion with Mr. Navarrete.  While he suggests that he may have occasion to petition the California Supreme Court for relief in the future, these speculative allegations are insufficiently particular and concrete to support Article III standing for purposes of injunctive relief.[10]  *See Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 926 (N.D. Cal. 2012) ("[A] single incident is insufficient to establish a likelihood of future injury under Ninth Circuit law.") (quotations omitted); *cf. Hiramanek v. Clark*, No. 13-cv-0228 EMC, 2014 WL 107634, at *5 (N.D. Cal. Jan. 10, 2014) ("At this juncture of the proceedings, Ms. Hiramanek has alleged enough facts to support standing because, in the SAC, there are allegations suggesting that there has *been a pattern of denials of accommodations*.") (emphasis added).

### b.    Declaratory relief

In the proposed SAC, Mr. Constantin requests the following declaratory relief for alleged violations of Title II of the ADA: (1) a statement that "primary consideration must be given to

---

[10] In its prior order, the Court observed that public court records indicated that "the Court of Appeal issued a decision in Mr. Constantin's appeal on February 27, 2023 and denied his petition for rehearing on March 22, 2023."  Dkt. No. 16 at 12 (citing Docket, *Cassie C. v. Mitchel C.*, No. H047138 (Cal. Ct. App.)).  The Court further noted that "Mr. Constantin filed another petition for review in the California Supreme Court, which was denied on May 17, 2023."  *Id.* at 13 (citing Docket, *Cassie C. v. Mitchel C.*, No. S27946 (Cal.)).  The appeal forming the basis of the claims in this matter has thus been fully adjudicated.

United States District Court
Northern District of California

1    how a person with communication disabilities prefers to communicate when it comes to

2    reasonable modification requests"; (2) a statement that "it is a reasonable accommodation to

3    explain court processes and decisions to individuals with mental and cognitive

4    disabilities/impairments"; (3) a statement that "it is reasonable for a request to 'cut the red tape' to

5    be considered a plea to engage in the interactive process"; and (4) a statement that "CSC must

6    engage in an interactive process with Mr. Constantin."  Dkt. No. 42 at ECF 39-42.  Mr. Navarrete

7    argues again that Mr. Constantin has not established a likelihood of future injury warranting the

8    declaratory relief he seeks in the proposed SAC.  Dkt. No. 32 at 9.

9         "The purpose of a declaratory judgment is to clarify in an expeditious manner the 'rights,

10   liabilities, and other legal relationships' between adverse parties."  *Bethel Native Corp. v. Dep't of*

11   *Interior*, 208 F.3d 1171, 1176 (9th Cir. 2000) (quoting 12 *Moore's Federal Practice* § 57.02(1), at

12   57-59 (3d ed.1998)).  "The limitations that Article III imposes upon federal court jurisdiction are

13   not relaxed in the declaratory judgment context."  *Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d

14   1125, 1129 (9th Cir. 2005).  Thus, standing in a declaratory judgment context requires that "the

15   challenged activity . . .  is not contingent, has not evaporated or disappeared, and, by its continuing

16   and brooding presence, casts what may well be a substantial adverse effect on the interests of

17   the . . . parties."  *Anicama v. Oracle Am., Inc.*, No. 23-cv-04640-EMC, 2024 WL 3416512, at *7

18   (N.D. Cal. July 15, 2024) (quoting S*even Words LLC v. Network Sols.*, 260 F.3d 1089, 1098-99

19   (9th Cir. 2001)).  "A declaratory judgment merely adjudicating past violations of federal law—as

20   opposed to continuing or future violations of federal law—is not an appropriate exercise of federal

21   jurisdiction."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).

22   Accordingly, Mr. Constantin must demonstrate that the conduct he is seeking to remedy "presently

23   affects him or can reasonably be expected to affect him in the future."  *Id.*

24        As discussed above, Mr. Constantin fails to plausibly allege a likelihood of future injury,

25   as the primary violation alleged is Mr. Navarrete's failure to engage in the interactive process to

26   determine whether the court's rules could be modified, as an accommodation, to permit Mr.

27   Constantin to file an oversized document with the California Supreme Court.  Mr. Constantin does

28   not plausibly allege that this failure is likely to be repeated.  *Mendia v. Garcia*, 165 F. Supp. 3d

United States District Court
Northern District of California

861, 894 (N.D. Cal. 2016).

*** 

Accordingly, the Court concludes that Mr. Constantin has not plausibly alleged standing to pursue injunctive or declaratory relief based on purported violations of Title II of the ADA.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Mr. Navarrete's motion to dismiss the first amended complaint.  The Court denies Mr. Constantin's motion for leave to file a proposed second amended complaint because that complaint does not state a claim upon which relief may be granted.

Mr. Constantin has now had the opportunity both to amend his complaint and to present to the Court his proposal for further amendment.  Mr. Constantin concedes that his first amended complaint contains no material changes as compared to his original complaint, and the Court now concludes that his proposed second amended complaint does not state any viable claim for relief. In these circumstance, the Court concludes that further amendment would be futile.  The operative complaint (Dkt. No. 29) is therefore dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: March 10, 2025

Virginia K. DeMarchi
United States Magistrate Judge